IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FOURTEEN PARTNERS, INC., f/k/a HBG DESIGN, INC., <br><br> Plaintiff, <br><br> v. <br><br> ASSA ABLOY ACCESSORIES AND DOOR CONTROLS GROUP, INC., ASSA ABLOY ACCESS AND EGRESS HARDWARE GROUP, INC., and ASSA ABLOY SALES AND MARKETING GROUP, INC., <br><br> Defendants. | Case No. 2:22-cv-2636-JPM-cgc |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Corrected Motion for Summary Judgment filed by Defendants ASSA ABLOY Accessories and Door Controls Group, Inc. ("ADCG"); ASSA ABLOY Access and Egress Hardware Group, Inc. ("AEHG"); and ASSA ABLOY Sales and Marketing Group, Inc. ("AASM"; collectively, "Defendants"). (ECF No. 86.) Also before the Court are Plaintiff Fourteen Partners, Inc.'s ("Plaintiff's" or "Fourteen Partners'")[1] Response in Opposition and Defendants' Reply in Support. (ECF Nos. 90, 92.) Defendants claim that there is no genuine dispute as to any material fact regarding Plaintiff's claims for breach of contract, negligence, and common law indemnity, and the established factual record entitles Defendants to judgment

---

[1] At all relevant times in the conduct underlying this case, Plaintiff was known as HBG Design, Inc. ("HBG"). While the Parties' briefings continue to refer to Plaintiff as HBG, (see, e.g., ECF No.86-1 at PageID 2945 (referring to "HBG's claims"), this Order utilizes the above nomenclature.

as a matter of law on all claims.  (ECF No. 86-1 at PageID 2945.)  Plaintiff counters that there is sufficient genuine dispute about certain material facts such that summary judgment is inappropriate.  (ECF No. 90-1 at PageID 5508.)

For the reasons discussed below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

I. BACKGROUND

A. Undisputed Factual Background

At issue is liability for erroneous door hardware finish specifications.  Plaintiff is an architectural firm based in Memphis, Tennessee.  (ECF No. 92-3 at PageID 5704.)  The architects employed by Plaintiff are licensed in several other states, including Indiana.  (Id. at PageID 5705.)  ADCG is a Delaware corporation with its principal place of business in North Carolina.  (ECF No. 1 at PageID 3.)  AEHG is a Delaware corporation with its principal place of business in Connecticut.  (Id.)  AASM is a "Connecticut company that assists architects with the development of technical door and hardware specifications for commercial projects."  (ECF No. 92-3 at PageID 5705.)  AASM has a practice of giving specification services for no charge to market and sell ASSA ABLOY products.  (ECF No. 92-2 at PageID 5688, 5692.)

Plaintiff was hired by the Pokagon Gaming Authority ("Owner") as part of a construction project at the Four Winds Casino and Hotel in South Bend, Indiana (the "Project").  (ECF No. 92-3 at PageID 5705.)  Plaintiff and Owner entered into a contract ("Owner Contract") under which Plaintiff would provide "architectural and design services for [the] large casino, hotel, and event center."  (ECF No. 86-1 at PageID 2941.)

Plaintiff "engaged AASM to assist with the development of door hardware specifications for the Project."  (ECF No. 92-3 at PageID 5706.)  Parties dispute what, if any,

2

working relationship they may have had prior to the Project.  (ECF No. 92-2 at PageID 5690–91.)  While AASM understood that its role during the Project was to provide architectural door hardware consulting services to Plaintiff, there was no written contract between the two parties.  (ECF No. 92-3 at PageID 5712–13.)  Defendants gave specification services for free as a marketing strategy for ASSA ABLOY products and thus did not receive direct payment from Plaintiff.  (ECF No. 92-2 at PageID 5692; ECF No. 92-3 at PageID 5714.)

While initially conceived as one plan, the Project was eventually constructed in two phases, with construction beginning in 2015 and ending in 2023.  (ECF No. 92-3 at PageID 5706.)  The hardware specifications for Phase Two were governed by a separate project manual (the "Phase Two Project Manual") and contract (the "Phase Two Owner Contract").  (See ECF No. 92-3 at PageID 5708, 5716.)  The Phase Two Owner Contract, entered on March 13, 2017, between Plaintiff and Owner, did not list AASM as a consultant, although the Parties dispute the requirements and significance regarding consultants under that contract.  (ECF No. 92-3 at PageID 5708–11.)

The Owner initially requested a Dark Oxidized Satin Bronze finish, identified in the specifications by code 613 or US10B, on certain door hardware components.  (Id. at PageID 5716.)  This finish was an oil-rubbed bronze.  (See ECF No. 90-1 at PageID 5516.)  In April 2016, the Owner requested a different finish code of 613E or US10BE, which identifies a "specialty power-coated finish described as a Dark Oxidized Satin Bronze, Equivalent."  (ECF No. 92-3 at PageID 5716.)  The Phase One issued hardware specifications had this correct finish code.  (Id. at PageID 5717.)  There is a dispute as to Plaintiff's employees' knowledge and familiarity with the differences between the two finish codes.  (Id. at PageID 5723–24.)  Plaintiff

3

"controlled all aspects of communicating the Owner's design choices to AASM for the specifications." (Id. at PageID 5724.)

In September 2017, AASM began work on Phase Two. (Id.) During Phase One, the Owner's original finish request of 613/US10B was uploaded into Openings Studio, AAM's proprietary specification writing program. (ECF No. 92-3 at PageID 5717–18, 5720.) Although there is genuine dispute as to how the Owner's requested change would be made, it was ultimately not made in Openings Studio. (See id. at PageID 5718–19.) When the Phase Two work began at AASM, the incorrect information was used to begin the Phase Two specifications, which "did not reflect the hardware finish [for the doorknobs] that was specified and installed in Phase One." (Id. at 5719.) There is a dispute about the responsibility for the contents of the Phase Two Project Manual and the editing practices and feasibility with Opening Studios. (See ECF No. 92-3 at PageID 5707–8, 5719–20.)

In 2021, Plaintiff engaged a separate architectural hardware consultant, Frank Erbschloe, during the construction stage of Phase Two. (Id. at PageID 5721.) Mr. Erbschloe had some interaction with the Phase Two hardware specifications. (Id. at PageID 5721–22.)[2]

Plaintiff "did not compare the finish codes between the Phase One and Phase Two specifications to ensure accuracy." (Id. at PageID 5725.)

In March 2022, after hardware for Phase Two was ordered and delivered to the Owner, Square One Consultants Inc., "the Owner's consultant/representative," informed Plaintiff that the Phase Two Manual used the outdated finish code (i.e., 613/US10B) instead of the correct finish code (i.e., 613E/US10BE) requested by the Owner and installed in Phase One. (Id. at

---

[2] Plaintiff does not directly dispute Defendants' statement of facts that Mr. Erbschloe contributed to or reviewed the door hardware specifications for Phase Two. (Id.) Plaintiff only asserts that Mr. Erbschloe was not retained for such purposes. (Id.)

4

PageID 5723, 5725.)  The Owner subsequently demanded Plaintiff cover the additional costs of replacing the incorrect hardware.  (Id. at PageID 5725.)  Plaintiff and its professional liability carrier settled the Owner's claim for a total of $589,025.26.  (Id.)[3]

### B. Procedural Background

Plaintiff brought a Complaint against ADCG and AEHG on August 17, 2022, in the Chancery Court of Tennessee for the Thirtieth District at Memphis.  (ECF No. 1.)  ADCG and AEHG were served on August 22, 2022.  (Id. at PageID 2.)  ADCG and AEHG removed the case to this Court on September 20, 2022, citing the Court's diversity jurisdiction.  (ECF No. 1 at PageID 2–3.)  Plaintiff filed its Amended Complaint on October 25, 2022, adding AASM.  (ECF No. 15.)

Defendants filed the instant Motion for Summary Judgment on April 29, 2024.  (ECF No. 86.)  Plaintiff filed its Response in Opposition on May 24, 2024.  (ECF No. 90.)  Defendants filed their Reply in Support on June 5, 2024.  (ECF No. 92.)  Both Parties have filed statements of allegedly undisputed material facts and their respective responses.  (ECF Nos. 86-2, 90-1, 91, 92.)

The Court held a hearing on the instant Motion on June 25, 2024, where it heard arguments as to the choice-of-law and contract issues.  (ECF No. 94, Minute Entry.)  A bench trial is set for January 27, 2025.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment "if [it] shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For the purposes of summary judgment, a fact is "material" if "proof of that

---

[3] Plaintiff paid $249,216, with the carrier paying the remaining $339,809.26.  (Id.)

5

fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). First, the "moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If satisfied, the burden then shifts to the non-moving party to "set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e). If "the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted). The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)).

To show whether a fact is genuinely disputed, a party must "cit[e] to particular parts of materials in the record," "show[] that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P.

6

56(c)(1)); see also L.R. 56.1(b)(3).  The court must consider the cited materials and it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The court need not "search the entire record to establish that it is bereft of a genuine issue of material fact."  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (internal citations omitted).  The non-moving party must present enough affirmative evidence to support a reasonable jury's verdict in its favor.  Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (citing Liberty Lobby, 477 U.S. at 251).  Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient to defeat a motion for summary judgment.  See Mitchell, 964 F.2d at 584–85.

## III. ANALYSIS

The Court draws all reasonable inferences of fact in favor of Plaintiff as the non-moving party.  See Robertson, 753 F.3d at 614.

Given the Court's diversity jurisdiction in this case, its choice-of-law analysis is governed by the laws of Tennessee as the forum state.  See Stone Surgical, LLC v. Stryker Corp., 858 F.3d 383, 389 (6th Cir. 2017.)  Tennessee's choice-of-law rules differ based on the type of claim at issue.  Savers Fed. Sav. & Loan Ass'n v. Home Fed. Sav. & Loan Ass'n, 721 F. Supp. 940, 942 (W.D. Tenn. 1989).

### A. Breach of Contract

#### i. Choice of Law

In contract cases, Tennessee follows the general rule of *lex loci contractus*, meaning that the law of the state where the contract was formed governs.  Solomon v. FloWARR Mgmt. Inc., 777 S.W.2d 701, 704–5 (Tenn Ct. App. 1989) (internal citations omitted).  Exceptions to that

7

rule may apply when the contract is formed in one state "with reference to the law of some other state." Ohio Casualty Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 466–67 (Tenn. 1973).

Defendants urge the Court to follow the exception that if the contract is made in one place, but the parties agree to perform it in another place, "the law of the place of performance" governs the contract. Frix v. Integrity Med. Sys., Inc., No. 1:16-cv-02559-STA-egb, 2017 WL 4171987, at *4 (W.D. Tenn. Sept. 20, 2017) (quoting Edgington v. Edgington, 162 S.W.2d 1082, 1086 (Tenn. 1942)).

Plaintiff argues that Frix should not dictate the Court's ruling. Plaintiff first points to the opinion's unreported status. (ECF No. 90-1 at PageID 5513.) Plaintiff then asserts that Defendants' territory model of business distinguishes the present case from Frix, where parties' negotiations across state lines made it impossible to determine where the contract was entered. (Id.); see Frix, 2017 WL 4171987, at *4. Rob Collins, the architectural consultant who negotiated and worked with Plaintiff on behalf of AASM, was in charge of the sales territory of middle and west Tennessee. (ECF No. 92-2 at PageID 5689–90.) The specifications at issue were delivered to Plaintiff in Tennessee. (ECF No. 92-2 at PageID 5694.)[4] Nowhere in the record is there any indication that the alleged agreement between Plaintiff and AASM formed in Tennessee referred to Indiana law. See Ohio Casualty. Ins. Co., 493 S.W.2d at 466–67.

Additionally, Plaintiff argues that the Owner Contract is wholly unrelated to the alleged oral contract between Plaintiff and Defendants. (ECF No. 90-1 at PageID 5514.) The Court agrees. Given that Plaintiff and AASM's relationship formed and continued in Tennessee, Defendants cannot piggyback off the Owner Contract based in Indiana to bar claims against

---

[4] Defendants objected to this as irrelevant but did not dispute it for the purposes of the instant Motion. (Id.)

8

their alleged conduct in Tennessee. Accordingly, Tennessee law governs Plaintiff's breach of contract claim against Defendants.

    ii.    Merits

Defendants assert that Plaintiff's breach of contract claim necessarily fails as a matter of law because Plaintiff "cannot prove the core elements of mutual assent and sufficiently definite terms for the Court to find the existence of a contract." (ECF No. 86-1 at PageID 2945.) Defendants also claim that the statute of frauds bars Plaintiff's claim since the agreement was never memorialized in writing and could not be completed within one year. (ECF No. 86-1 at PageID 2945.)[5]

Under Tennessee law, an oral contract is valid when there is mutual assent to the agreement and the terms thereof are "sufficiently definite." See Great Am. Ins. Co. v. Nelson Inc., No. 2:16-cv-02283-TLP-cgc, 2018 WL 6037542, at *4 (W.D. Tenn. Nov. 16, 2018) (quoting Castelli v. Lien, 910 S.W.2d 420, 427 (Tenn Ct. App. 1995).). Both Parties admit that there was no written agreement between them governing the doorknob specifications. (See ECF No. 92-3 at PageID 5712.) The key inquiry is whether there was an oral contract with a sufficiently definite term that Defendants could breach and that the breach thereof would cause damages for Plaintiff.

It is undisputed that Plaintiff "engaged AASM to assist with the development of door hardware specifications" for both phases of the Project. (ECF No. 91 at PageID 5656.) Defendants assert that "there is no evidence of sufficiently definite terms such as the division of duties between HBG and AASM at the various stages of design and construction, the parties'

---

[5] Under Tennessee law, the statute of frauds is a narrow defense that is defeated by partial performance. See Talkington v. Anchor Gasoline Corp., 821 F. Supp. 505, 510 (M.D. Tenn. 1993); Blasingame v. American Materials, Inc., 654 S.W.2d 659, 663 (Tenn. 1983). However, the Court need not undertake that analysis here since the Court's analysis of the existence of an oral contract below disposes of this question.

9

expectations, or the scope of work." In response, Plaintiff cites testimony from AASM employees explaining their knowledge about the details of AASM's specifications work on the Project for Plaintiff. (See ECF No. 90-1 at PageID 5516.) Mere knowledge of the general work to be done, however, does not provide sufficiently definite terms regarding parties' obligations and expectations to form a valid oral contract. See Great Am Ins. Co., 2018 WL 6037542, at *4. Accordingly, Defendants have met their "initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder, 679 F.3d at 448.[6]

Plaintiff must now "set forth specific facts showing a triable issue of material fact" regarding their purported oral contract with Defendants. Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e). Plaintiff counters that, regardless of the choice of law issue, "it is well-established that the existence of mutual assent in the creation of the oral contract is a question of fact and, therefore, inappropriate for summary judgment." (ECF No. 90-1 at PageID 5514 (citing Indiana case law).) Plaintiff must nonetheless present enough affirmative evidence, not merely conclusory allegations, to support a reasonable jury's verdict in its favor on this question. See Tingle, 692 F.3d at 529; Mitchell, 964 F.2d at 584–85.

Plaintiff argues that there is "overwhelming" evidence from which a reasonable juror could conclude the Parties formed an oral contract. (ECF No. 90-1 at PageID 5515.) Plaintiff, however, puts forth confusing definitions of the offer and acceptance necessary to allow a factfinder to find that an oral contract existed between the Parties. Plaintiff quotes an AASM employee as saying the offer included the specifications writing. (ECF No. 90-1 at PageID

---

[6] Defendants also assert that Plaintiff's hiring of Mr. Ersbchloe effectively replaced AASM's role in the project and thus shows that there was no binding contract between the Parties. (ECF No. 86-1 at PageID 2954–55.) However, there is a genuine dispute of material fact regarding Mr. Erbschloe's role in the Project and the apparent termination of the Parties' working relationship for the Project. (See ECF No. 92-3 at PageID 5721–22.) Accordingly, this is not a factor in favor of summary judgment. See Fed. R. Civ. P. 56(a).

5515.) Plaintiff also asserts that Defendants accepted the offer when "AASM made recommendations and wrote the final specifications for door hardware to be used in both [phases]." (ECF No. 90-1 at PageID 5515.) The specifications writing cannot be both offer and acceptance by performance. Rest. (2d) Contracts § 50(1) ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer."). Thus, this argument is unavailing.

In the alternative, Plaintiff argues that the Parties' past dealings and the reliance interests for the specifications in question give rise to an enforceable contract. (ECF No. 90-1 at PageID 5517.) However, that still does not outline what exactly the agreement was that Defendants allegedly could (and did) breach.

The record does not provide enough facts that would allow a factfinder to determine that there was mutual assent in the form of offer and acceptance giving rise to an oral contract with definite terms that Defendants could then breach with the erroneous doorknob specifications. Accordingly, there is no genuine dispute as to any material fact underlying Plaintiff's breach of contract claim. See Fed. R. Civ. P. 56(a). Since Plaintiff failed to establish this claim, Defendants are entitled to judgment as a matter of law. See id.; Bruederle, 687 F.3d at 776. Thus, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's breach of contract claim.

### B. Negligence

#### i. Choice of Law

Tennessee follows the "most significant relationship test" for its choice-of-law rules for negligence claims. Hataway v. McKinley, 830 S.W.2d 53, 57 (Tenn. 1992). Under this test, the "court applies the 'law of the state where the injury occurred . . . unless, with respect to the

11

particular issue, some other state has a more significant relationship . . . to the occurrence and the parties.'" Hataway, 839 S.W.2d at 57 (quoting Rest. (2d), §§ 146, 175). Tennessee courts must consider four factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." Lemons v. Cloer, 206 S.W.3d 60, 66 (Tenn. Ct. App. 2006). Courts also evaluate the relevant contacts with the states in question using seven principles to determine which state has the most significant relationship. See Hataway, 830 S.W.2d at 59 n.3; Arvest Bank v. Byrd, 814 F. Supp. 2d 775, 789 (W.D. Tenn. 2011) (quoting Tennessee case law).[7]

Here, there is a true conflict of laws. Indiana law would bar Plaintiff's negligence claim under the economic loss doctrine. See Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard. P.C., 929 N.E.2d 722, 736 (Ind. 2010); JMB Mfg., Inc. v. Child Craft, LLC, 799 F.3d 780, 785 (7th Cir. 2015). Tennessee law does not follow the economic loss doctrine and would allow Plaintiff's negligence claim to proceed. Com. Painting Co. Inc. v. Weitz Co. LLC, 676 S.W.3d 527, 547 (Tenn. 2023). Accordingly, the choice-of-law question may be dispositive.

    1.    <u>The place where the injury occurred</u>

Defendants characterize the injury as the erroneous change order and Plaintiff's subsequent payment to the Owner for its loss, which it argues occurred in Indiana. (ECF No. 86-1 at PageID 2949.) Plaintiff counters that its economic injury was "felt" in Tennessee, where

---

[7] Those principles are: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied. Id.

12

the company is located. (ECF No. 90-1 at PageID 5523 (citing Traffic Safety Devices, Inc. v. Safety Barriers, Inc., No. 3:02-CV-636, 2006 WL 8443019, at *1 (E.D. Tenn. Feb. 14, 2006)).) This factor weighs in favor of applying Tennessee law. See Lemons, 206 S.W.3d at 66.

        2.     The place where the conduct causing the injury occurred

As mentioned above, Defendants characterize the causation of Plaintiff's injury as the erroneous order and delivery of the incorrect door hardware in Indiana. (ECF No. 92-1 at PageID 5676–77.) Plaintiff characterizes the causation of the injury as AASM's delivery of erroneous door hardware specifications to Plaintiff in Tennessee. (ECF No. 90-1 at PageID 5523.) Plaintiff also highlights that the specification work was directed through Rob Collins as the architectural consultant for the relevant territory in Tennessee to Plaintiff, a Tennessee company. (Id.) Accordingly, this factor also weighs in favor of applying Tennessee law. See Lemons, 206 S.W.3d at 66.

        3.     The domicile, residence, nationality, place of incorporation, and place of business of the parties

Defendants are incorporated in Delaware with principal places of business in Connecticut and North Carolina. (ECF No. 1 at PageID 3; ECF No. 92-3 at PageID 5705.) AASM conducts business in Tennessee. (ECF No. 92-2 at PageID 5689–90.) Plaintiff is incorporated in and based in Tennessee. Accordingly, this factor also weighs in favor of applying Tennessee law. See Lemons, 206 S.W.3d at 66.

        4.     The place where the relationship, if any, between the parties is centered

Of the four factors, this analysis relies most heavily on facts that are genuinely in dispute. Defendants urge that the Parties' relevant relationship was limited to and thus centered

13

in the Project in Indiana. (ECF No. 86-1 at PageID 2949–50.)[8] Plaintiff counters that the Parties' relationship was centered in Tennessee due to AASM's solicitation and furnishing of hardware specification services to Plaintiff in Tennessee. (ECF No. 90-1 at PageID 5524.) On balance, the Court finds the Plaintiff's argument more persuasive. Thus, this factor slightly favors applying Tennessee law. See Lemons, 206 S.W.3d at 66.

        5.       Outcome

On balance, Tennessee has the most significant relationship to the case at hand and thus Tennessee law applies to Plaintiff's negligence claims.

    ii.    Merits

Defendants first argue that Plaintiff's negligence claim is barred by the economic loss doctrine. (ECF No. 86-1 at PageID 2957–58.) Defendants nonetheless recognize that Tennessee law applies the economic loss rule exclusively to the product liability cases. (ECF No. 86-1 at PageID 2947–48 ("Tennessee law does not bar claims outside of the product liability context based on the economic loss rule.") (citing Com. Painting Co. Inc. v. Weitz Co. LLC, 676 S.W.3d 527, 547 (Tenn. 2023).) Since Tennessee law governs here as well, Defendants' Motion fails on these grounds.

Defendants also argue that Plaintiff cannot succeed on its negligence claim as a matter of law because Plaintiff failed to disclose an expert witness who may opine on the "custom and practice of the hardware industry" as alleged in Plaintiff's Complaint. (ECF No. 86-1 at PageID 2961 (quoting ECF No. 15 at PageID 62–63).) As part of its Rule 26(a)(2) Expert Disclosures, Plaintiff disclosed Lee H. Askew, III, FAIA, who is "expected to testify regarding the standard

---

[8] In support, Defendants point to the Owner Contract which stated that the "Agreement shall be governed by the law of the place where the project is located," namely Indiana. (Id. at PageID 2950.) However, as previously discussed, Defendants cannot claim protection under a contract to which they were not a party.

14

of professional care applicable to architects practicing in Memphis, Shelby County, Tennessee with respect to the preparation of architectural plans and design specifications including, without limitation, the plans and specifications of the subject door hardware." (ECF No. 57 at PageID 171–72.) Defendants apparently assert that this testimony would not establish the "custom and practice of the hardware industry."

"[W]hen negligence is not obvious and readily understandable by an average layperson, expert testimony will be required to demonstrate the applicable standard of care and breach of that standard." Tolliver v. Tellico Village Property Owners Association, Inc., 578 S.W.3d 8, 21–22 (Tenn. Ct. App. 2019) (internal quotations omitted). Cases involving professional liability which require "technical analysis or discussion" often require expert testimony. Id. at 22 (internal citations omitted). However, such expert testimony "may be dispense with when the acts of professional negligence are so obvious that they come within the common knowledge of lay persons." Martin v. Sizemore, 78 S.W.3d 249, 272 (Tenn. Ct. App. 2001).

Plaintiff alleges Defendants' negligence pertains to the specification writer's failure to match the Phase II finish specifications with the Phase I specifications. (See ECF No. 90-1 at PageID 5530.) Thus, Plaintiff argues that the "common knowledge" exception applies. (Id. (citing Martin, 78 S.W.3d at 272).) In opposition, Defendants point to Plaintiff's statements throughout the record regarding the complexity of the Opening Studios software and its architects' lack of familiarity with the specification codes. (ECF No. 92-1 at PageID 5683.) These statements, however, do not necessarily contradict Plaintiff's assertion that the failure to match was ordinary negligence falling under the "common knowledge" exception. Defendants, however, have failed to show that there is no genuine dispute of material fact regarding the duty

15

of care for Plaintiff's negligence claim. See Fed. R. Civ. P. 56(a). Accordingly, Defendants' Motion as to Plaintiff's negligence claim is **DENIED**.

### C. Common-Law Indemnity

At the June 2024 hearing, the Parties agreed that the common-law indemnity claim is derivative of the two previous claims, and thus fails if the others both fail. Since Defendants are entitled to judgment as a matter of law regarding Plaintiff's breach of contract claim, Defendants are also entitled to judgment as a matter of law to the extent Plaintiff claims common-law indemnity under their purported contract. To that extent, Defendants' Motion is **GRANTED IN PART**. However, Plaintiff's negligence claims survive summary judgment since there is a genuine dispute of material fact regarding each Party's liability under tort law. (See supra Part III.B.) Accordingly, Defendants' Motion is **DENIED IN PART** as it relates to Plaintiff's common-law indemnity claim under tort law.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion is **GRANTED** as to Plaintiff's breach of contract claims and the derivative common-law indemnity claims. Defendants' Motion is **DENIED** as to Plaintiff's negligence claims and the derivative common-law indemnity claims.

**SO ORDERED**, this 16th day of December, 2024.

                                                  */s/ Jon P. McCalla*
                                                  JON P. McCALLA
                                                  UNITED STATES DISTRICT JUDGE